IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BART R. B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-645-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Bart R. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 47-year-old male, protectively applied for Title II disability benefits on January 16, 2019, alleging a disability onset date of December 1, 2018, later amended to January 7, 2020. R. 15, 206-207, 238. Plaintiff claimed he was unable to work due to numerous conditions, including L1 compression fracture; S5/L1 extruded disc, 2 back surgery failure; radiculopathy left leg; cluster headaches secondary to back condition; posterior tibial nerve damage; major depression/anxiety/dysthymia; vascular condition to include circulatory restriction; and MSSA infection in back. R. 240. Plaintiff's claim for benefits was denied initially on June 18, 2019, and on reconsideration on August 8, 2019. R. 99-130. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on April 7, 2020. R. 30-45. The ALJ issued a decision on April 15, 2020, denying benefits and finding Plaintiff not disabled because he was able to perform

his past relevant work as a Department Chairman and Social Worker. R. 15-24. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff met the insured requirements for Title II purposes through December 31, 2020. R. 17. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of January 7, 2020. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease at L5-S1; status post left laminotomy and bilateral discectomy at L5-S1; and status post re-operative left L5-S1 hemilaminectomy and partial medial facetectomy. *Id.* The ALJ found Plaintiff's medically determinable impairments of depression and anxiety to be non-severe. *Id.* In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself; and he had no limitation in the functional area of interacting with others. R. 18. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 19.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of sedentary work as follows:

> [T]he claimant can lift and/or carry ten pounds occasionally and less than ten pounds frequently. He can sit for six hours out of an eight-hour day with normal breaks and he can stand and/or walk two hours out of an eight-hour day with normal breaks. He should not climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. He has no limitations in balancing.

R. 19. Based on the testimony of a vocational expert ("VE") at step four, the ALJ found that Plaintiff could return to his past relevant work as a Department Chairman and Social Worker, both

as generally performed. R. 23. Accordingly, the ALJ concluded Plaintiff had not been disabled from January 7, 2020, through the date of decision.

## III. Issue

Plaintiff raises one allegation of error on appeal: that the ALJ committed reversible legal error by failing to properly evaluate the opinions of Plaintiff's treating physician, Douglas Ivins, M.D. ECF No. 16 at 4.

## IV. Analysis – ALJ's Analysis of Dr. Ivins' Opinion Was Legally Improper

Plaintiff argues the ALJ committed reversible error by improperly evaluating a January 7, 2020, medical opinion from treating physician Dr. Ivins. *See* R. 1344-1346 (Dr. Ivins' opinion). For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 404.1520c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).[1] Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how she considered those two factors. 20 C.F.R. § 404.1520c(b)(2).[2] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion,

---

[1] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

[2] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

5

such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(2)-(c).

In this case, treating physician Dr. Ivins filled out a Department of Veterans Affairs form titled, "Examination for Housebound Status or Permanent Need for Regular Aid and Attendance," on January 7, 2020 (the amended alleged onset date). R. 1344. Dr. Ivins stated that Plaintiff's diagnoses were weakness and back pain with lumbar spinal stenosis, and his gait was "ambulatory." R. 1345. Dr. Ivins took Plaintiff's blood pressure, pulse rate, and respiratory rate. *Id.* Dr. Ivins stated that Plaintiff was able to feed himself and to prepare his own meals, but he needed help getting into and out of a bathtub, and getting dressed and undressed due to numbness with severe pain in the right and left hips and legs. *Id.* Dr. Ivins stated that Plaintiff had some significant weakness, and Dr. Ivins opined that Plaintiff was only able to stand for up to 5-10 minutes. R. 1346. He opined that Plaintiff had a ten-pound weight limit for lifting, noting that Plaintiff had undergone right shoulder surgery but had fairly adequate upper extremity function. *Id.* He opined that Plaintiff was unable to balance or stand for "extended periods," noting that Plaintiff had significant lower extremity weakness and numbness. *Id.* Dr. Ivins further stated that Plaintiff had significant bilateral hip and leg pain, had significant balance issues, and had fallen several times over the last few months. *Id.* He opined that Plaintiff would be able to leave home only for shopping and medical appointments. *Id.* He opined that Plaintiff would be able to walk one block and would need a cane for locomotion. *Id.*

The ALJ summarized and assessed the statements and opinions of Dr. Ivins, although he incorrectly referred to Dr. Ivins as "Dr. Irving" throughout the decision. R. 21-23. The ALJ found Dr. Ivins' opinion "unpersuasive," citing four reasons. R. 23. First, the ALJ found Dr. Ivins' opinion that Plaintiff was unable to balance or stand for "extended periods" was vague and

6

unhelpful. The ALJ noted that "extended periods" could equal one hour, two hours, or ten minutes. Second, the ALJ stated that there were "absolutely no physical examination findings to support Dr. Irving's opinion." Third, the ALJ stated it was not clear that the limitations in the report were the physician's objective opinions versus Plaintiff's subjective self-reports. Fourth, the ALJ stated that the last physical examination in the record (September 2019 visit with Jason Sparks, D.O.) showed only positive seated straight leg raise on the left, a limp, and no observation of use of an assistive device. R. 23 (citing R. 1334-1335).

Plaintiff argues the ALJ's assessment of Dr. Ivins' opinion was improper, because the ALJ failed to recognize that Dr. Ivins was a treating physician who had actually examined and treated Plaintiff on numerous occasions, dating back to at least September 2017. *See* R. 348-351, 943-944, 947-948, 965-966, 968-969, 974, 1036-1042, 1065-1068, 1099-1103, 1222-1223, 1290-1297, 1344-1346 (VA records showing Dr. Ivins as treating physician). Plaintiff contends that the ALJ clearly held a mistaken belief that Dr. Ivins (identified by the ALJ as "Dr. Irving") only saw Plaintiff on one occasion, and that the ALJ relied on that mistaken belief in evaluating Dr. Ivins' opinion. In response, the Commissioner contends that the ALJ did not err, because the new regulations no longer require the ALJ to discuss the medical source's treating relationship with the claimant. *See* 20 C.F.R. § 404.1520c(b)(2)-(c). The Commissioner points out the ALJ did not expressly state that Dr. Ivins' relationship with Plaintiff consisted of a one-time examination, and the ALJ correctly stated that the only objective findings noted on Dr. Ivins' opinion form were Plaintiff's vital signs. R. 1345.

The Commissioner is correct that, under the new regulations, the ALJ need not discuss a medical source's treating relationship when evaluating a medical source opinion. However, the ALJ may not mischaracterize the evidence to support her findings. *See Talbot v. Heckler*, 814

7

F.2d 1456, 1463-64 (10th Cir. 1987). Moreover, the Court must be able to follow the ALJ's reasoning to determine whether correct legal standards were applied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry on judicial review is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

The Court concludes the ALJ committed reversible error in evaluating Dr. Ivins' opinion. There are two possible scenarios in which the ALJ evaluated Dr. Ivins' opinion, either one of which requires reversal.

First, the ALJ's evaluation was likely based on a fundamental misunderstanding regarding Dr. Ivins' identity. The ALJ consistently misidentified Dr. Ivins as "Dr. Irving" when discussing the opinion. R. 21-23. On the opinion form, Dr. Ivins only handwrote and signed his name, which could be read as "Irving" rather than "Ivins." R. 1346. The opinion form also did not provide any space for Dr. Ivins to state his treating relationship to Plaintiff. More concerning, the ALJ repeatedly stated that "Dr. Irving" did not physically examine Plaintiff, and that it was unclear whether "Dr. Irving's" statements were based solely on Plaintiff's self-reports. *See* R. 21 ("Due to a complete lack of physical examination (beyond vitals), it is unclear upon what Dr. Irving based this statement or that it was even his opinion and not the claimant's self-report of his limitations"), R. 22 ("It is not clear that any of Dr. Irving's statements about the claimant's symptoms or abilities are based on anything other than the claimant's self-reports, given that Dr. Irving performed absolutely no physical examination of the claimant beyond checking his vital signs"), R. 23 ("there are absolutely no physical examination findings to support Dr. Irving's opinion," and "it is not even clear these limitations are Dr. Irving's objective opinion versus the claimant's subjective self-reports"). The ALJ's analysis did not address whether Dr. Ivins' January 2020 opinion was

8

consistent with any of his previous examinations of Plaintiff. *See, e.g.*, R. 1292-1293 (March 2019, examination by Dr. Ivins, which revealed weakness in back flexion, inability to bend much beyond 30 degrees without pain, and inability to twist much beyond 15-20 degrees without pain), R. 348-351 (January 2019 examination by Dr. Ivins), R. 1038-1042 (September 2018 examination by Dr. Ivins), R. 1065-1068 (April 2018 examination by Dr. Ivins). Given the ALJ's repeated insistence that "Dr. Irving" performed no physical examination of Plaintiff, the Court finds it highly likely that the ALJ misunderstood the evidence and mischaracterized it.

Second, even if the ALJ correctly understood that Dr. Ivins was the same doctor that gave the challenged opinion, the Court still cannot follow the ALJ's reasoning for finding Dr. Ivins' opinion unpersuasive. The ALJ did not acknowledge or discuss Dr. Ivins' previous objective findings regarding Plaintiff's back condition. The ALJ's repeated statements about a lack of any physical examination or objective findings are either incorrect or reflect confusion. In either case, remand is required for reconsideration of Dr. Ivins' opinion, so the Court can follow the ALJ's reasoning for rejecting Dr. Ivins' opinions.

The Commissioner argues that the ALJ's statements about "Dr. Irving" are correct, insofar as there are no objective findings noted on the opinion form beyond vitals, and the ALJ did not expressly state that "Dr. Irving" was a one-time examiner. The Court rejects this overly technical reading of the ALJ's assessment. A plain reading strongly suggests the ALJ did not realize that Dr. Ivins had examined Plaintiff on numerous previous occasions. The ALJ must clarify her understanding to enable the Court to review it.

Given the ALJ's flawed assessment, the undersigned cannot conclude that the ALJ's evaluation of Dr. Ivins' opinion, or the RFC, would have remained unchanged if the ALJ had properly reviewed the record. Accordingly, the ALJ's error is not harmless. *See Allen v. Barnhart*,

357 F.3d 1140, 1145 (10th Cir. 2004) (finding that harmless error doctrine applies only in the "exceptional circumstance" where the court could "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

**V.      Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 4th day of March, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**